UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RAYTHEON COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | CIVL ACTION NO. |
| | ) | 03CV12300RCL |
| v. | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE
DEFENDANT, NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA, TO TRANSFER THIS ACTION TO THE UNITED
STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK PURSUANT TO 28 U.S.C. § 1404(a), OR IN THE
ALTERNATIVE, TO (1) EXTEND THE TIME FOR NATIONAL
UNION TO RESPOND TO RAYTHEON COMPANY'S COMPLAINT
AND MOTION FOR PRELIMINARY INJUNCTION, (2) STAY THIS
ACTION PENDING ARBITRATION, OR (3) DISMISS RAYTHEON
COMPANY'S COMPLAINT**

**PRELIMINARY STATEMENT**

The defendant, National Union Fire Insurance Company of Pittsburgh, PA

("National Union"), respectfully requests that this Court transfer this action to the

United States District Court for the Southern District of New York ("New York

Federal Court") pursuant to 28 U.S.C. § 1404(a), where the Court has already heard

arguments and invested substantial time upon National Union's motion to compel

arbitration. The claims asserted in this action are subject to a written agreement to

arbitrate in New York, and accordingly this matter should be addressed by the

courts in New York, which has already undertaken to do so. Moreover, there are additional material connections to New York. Quite apart from the motion to transfer, this action should either be dismissed or stayed based upon the parties' agreement to arbitrate.

## INTRODUCTION

Beginning on April 1, 1994, National Union provided an insurance program to Raytheon Company ("Raytheon") which continued until June 1, 2002 (the "Program"). National Union Policy No. RMGL 319-7097 ("the Master Policy") provided liability coverage to Raytheon, certain of its subsidiaries and affiliates, and third parties when such parties were named as additional insureds. Under the Master Policy, Raytheon agreed, among other things, to reimburse National Union for losses and expenses incurred under the Program.

Effective June 1, 1998, an additional agreement (the "Payment Agreement") was added to the Program. See Exhibit "A" of Exhibit "A" to Raytheon Company's Motion for Preliminary Injunction. By its terms, the Payment Agreement governed all insurance policies, including the Master Policy, listed on annexed annual Schedules. See id. The Payment Agreement sets out a broad-based "Payment Obligation" which was defined as follows:

> "Your Payment Obligation" means your obligation to pay us for the insurance and services in accordance with the terms of the Program. Your Payment Obligation includes, but is not limited to, any of the following that

2

apply according to this Agreement, the Policies, their Predecessors, terms described in the Schedule, and other agreements:

- The premiums and premium surcharges,
- Deductible Loss Reimbursements,
- Service and credit fees.
- Your obligation to indemnify us for any amount that we may pay on your behalf because of any occurrence, accident, offense, claim or suit with respect to which you are a self-insurer,
- Any other fees, charges, or obligations as shown in the Schedule or as may arise as you and we may agree from time to time ...

See id. at p.4.  In addition, in accordance with the terms of the Program, Raytheon

provided National Union with letter of credit collateral to secure its Payment

Obligations to National Union.

The Payment Agreement contains a broad arbitration clause that states, in

relevant part, that:

If a dispute that you and we cannot settle by mutual agreement **arises about this agreement or any transaction related to it,** that dispute must be submitted to 3 arbitrators.  We may submit to such arbitration any dispute not resolved within 30 days after it arises.

...

If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, **either party may make an application to a Justice of the Supreme Court of the State of New York, Court of New York and the Court will appoint the additional arbitrator or arbitrators.**

...

How the arbitration must proceed:  **The arbitration must take place in New York, New York unless you and we agree otherwise.**  The

arbitration must be <u>governed</u> by the United States Arbitration Act, Title 9 U.S.C. Section 1, et. seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

<u>See</u> <u>id.</u> at p. 10. (Emphasis added.)

For more than two years, National Union has been attempting to collect reimbursement obligations relating to Raytheon's former construction unit, Raytheon Engineers & Constructors, Inc. ("RE&C"), which Raytheon divested on July 7, 2000 to Washington Group International, Inc. ("WGI"). Most recently, National Union demanded payment from Raytheon on September 8, 2003. <u>See</u> Exhibit "C-11" to Raytheon's Motion for Preliminary Injunction. On October 17, 2003, however, Raytheon responded to National Union's demand and denied responsibility for any of the amounts claimed by National Union. <u>See</u> Exhibit "C-14" to Raytheon's Motion for Preliminary Injunction. Accordingly, on October 31, 2003, National Union drew upon Raytheon's letter of credit in satisfaction of Raytheon's outstanding reimbursement obligation and demanded arbitration to take place in New York.

## PROCEDURAL HISTORY

On October 31, 2003, National Union served Raytheon with a Demand for Arbitration pursuant to the "arbitration clause" contained in the parties' Payment Agreement, effective June 1, 1998. <u>See</u> Exhibit "A" to Raytheon Company's Motion for Preliminary Injunction. The arbitration clause and the Demand for Arbitration each required that arbitration take place in "New York, New York" and

4

that Raytheon appoint an arbitrator within 30 days of National Union's demand for arbitration. As of November 30, 2003, however, Raytheon failed to appoint an arbitrator.

Instead of proceeding with arbitration, Raytheon filed a complaint in this Court on November 18, 2003, asserting substantially the same issues and disputes as those asserted by National Union in its Demand for Arbitration, and also seeking a preliminary injunction to restrain the arbitration from proceeding in New York.[1] See Raytheon Company's Complaint.

Two days later, on November 20, 2003, Raytheon then filed a complaint in the New York Federal Court seeking a stay of the arbitration pursuant to Section 7503(b) of the New York Civil Practice Law and Rules ("CPLR") and a ruling that no valid agreement to arbitrate exists between it and National Union with respect to the disputes asserted by National Union in its Demand for Arbitration. See Raytheon Company's NY Complaint attached hereto as Exhibit "1." On December 8, 2003, Raytheon then filed a Motion for Preliminary Injunction in this Court seeking to prevent National Union from proceeding with arbitration in New York.

In response, on December 15, 2003, National Union filed a motion in the New York Federal Court to compel arbitration pursuant to 9 U.S.C. § 4 and to enjoin prosecution of this competing proceeding. See National Union's Motion to

---

[1]  Incidentally, the arbitration clause contained in the parties' Payment Agreement prohibited National Union from taking further action to compel arbitration proceedings until Raytheon failed to appoint an arbitrator. Thus, in this case, National Union could not take further action in the United States District Court for the Southern District of New York until November 30, 2003, at the earliest.

Compel Arbitration Pursuant to 9 U.S.C. § 4 and to Enjoin Prosecution of a

Competing Proceeding which May Interfere with this Court's Jurisdiction attached

hereto as Exhibit "2." Raytheon filed its opposition to this motion on December

29, 2003 with the New York Federal Court. See Raytheon's Opposition to National

Union's Motion to Compel Arbitration and to Enjoin Another Federal Proceeding

attached hereto as Exhibit "3." National Union then filed a reply brief with the

New York Federal Court on December 30, 2003. See Reply Memorandum in

Support of National Union's Motion to Compel Arbitration attached hereto as

Exhibit "4." Oral arguments relating to National Union's motion to compel

arbitration were heard by the Honorable Judge Shira A. Scheindlin on December

30, 2003. A copy of hearing transcript is attached hereto as Exhibit "5."

## ARGUMENT

### I.    THIS ACTION SHOULD BE TRANSFERRED TO THE NEW YORK FEDERAL COURT PURSUANT TO 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"While the general rule favors the forum of the first-filed action, 'exceptions … are

not rare, and are made when justice or expediency requires …'" Holmes Group,

Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F.Supp.2d 12, 15 (D.Mass. 2002)

quoting Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937-938 (Fed.Cir. 1993).

6

In this case, judicial and litigant economy require that this action be transferred to the New York Federal Court, the same court where Raytheon filed a complaint only two days after filing its complaint in this proceeding.

## A.    JUDICIAL AND LITIGANT ECONOMY REQUIRES THAT THIS ACTION BE TRANSFERRED TO THE NEW YORK FEDERAL COURT.

In deciding which suit should proceed, courts do not slavishly follow temporal precedence. The United States Supreme Court held, in <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. at 21 (1983), that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." "[T]he primary purpose of the firstfiled rule ... is to conserve judicial resources and avoid conflicting rulings ... [A] court may depart from the firstfiled rule ... where one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum." <u>Jasper Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 1999 WL 781808, * 5 (M.D. Fla.); <u>Serco Services Co., L.P. v. Kelley Co., Inc.</u>, 51 F.3d 1037, 1039 (Fed.Cir. 1995).

In this case, only two days after filing it declaratory complaint in this Court, Raytheon filed a complaint in New York pursuant to CPLR § 7503 to stay the arbitration that was to take place in New York . While this action is at a very early stage – no answer has been filed, no conferences have been scheduled, and no judicial resources have been expended in this Court – numerous pleadings have

7

been filed in the New York Federal Court, and the Honorable Judge Shira A. Scheindlin has already invested considerable amounts of time in the related action filed by Raytheon in the New York Federal Court. Thus, in light of the significant efforts expended by Judge Scheindlin and the parties' extensive activities in the New York action, it would be a considerable waste of judicial and litigant resources for this Court to strictly adhere to the first-filed rule.

Specifically, numerous pleadings have been filed in the New York Federal Court. Raytheon filed a complaint in the New York Federal Court on November 20, 2003 in response to National Union's Demand for Arbitration. See Exhibit "1." National Union then filed a motion to compel arbitration pursuant to 9 U.S.C. § 4 and to enjoin prosecution of this present action pending before this Court on December 15, 2003. See Exhibit "2." Raytheon filed its opposition to this motion on December 29, 2003, and National Union filed a reply brief on December 30, 2003. See Exhibits "3" and "4."

On December 30, 2003, Judge Scheindlin presided over an hour-long argument addressing National Union's motion to compel arbitration. See Exhibit "5." In that transcript, concerning the effort of the Court, Judge Scheindlin stated:

> ... A lot of paper has been flying into my chambers, much of it at the last minute ... I received a memorandum of law from Mr. Wang in opposition to National Union's motion to compel arbitration, but I got that yesterday afternoon and there went my evening. I read it all evening. . . . [T]his is a very complex case, but I will tell you my thinking on a very complex case. This was not easy to read ... [T]he briefs that didn't arrive Monday occupied my weekend, so I have been living with this case in all kinds of unpleasant

> times, such as Sundays and Monday nights. Be that as it may, it's very complicated, and a lot of it was too hard for me to understand at first reading.

See Exhibit "5" at pp. 2-3.

In light of the complexity of the case, Judge Scheindlin further stated:

> It's just that I cannot see two federal judges working so hard – because this is so hard --- with very difficult underlying problems, very difficult, but there is no reason for two of us to do it. Judge Lindsay, who I have never met but I'm sure is a fine fellow, he shouldn't spend the new year weekend doing it if I'm going to spend the weekend doing it ... **There is absolutely no reason for two federal judges to do the same thing.**

See id. at p. 4 (Emphasis added).

Notwithstanding the fact that the Massachusetts action was filed first, Judge Scheindlin stated that she would attempt to decide National Union's motion to compel arbitration quickly. In fact, Judge Scheindlin is aware of Raytheon's complaint pending in this Court.

> MR. DAVIS (counsel for National Union): Your Honor, we are obliged to respond in Massachusetts on January 6.
>
> THE COURT: I know.
>
> MR. DAVIS: Is there any possibility your Honor will decide before then?
>
> THE COURT: Is there any possibility? Absolutely. Is that a guarantee? Absolutely not.
>
> MR. DAVIS: Can I be so bold as to ask my adversaries if they will extend my response date in Massachusetts until your Honor decide?
>
> MR. WANG (counsel for Raytheon): Fool me once, etc., etc. I think not. I will tell you this, and I will just repeat this one more time: They are asking to enjoin that proceeding all together. All together. I don't think there is

anything that's been said to you that would suggest that that should happen. What happens with respect to the motion, your Honor can decide the motion, but I believe that what happens in Massachusetts should go forward. And January 6 is the date that we gave them, and again what we will do in Massachusetts remains to be seen.

THE COURT: Well, take some comfort I am not even dreaming of enjoining another federal court. I am dreaming about deciding that motion fast, but that may be a dream. But I am not dreaming about enjoining another federal court.

See id. at pp. 54-55.

Thus, in light of the foregoing, this Court should transfer this action to the New York Federal Court. In the alternative, if this relief is not granted, National Union requests that this action be stayed pending Judge Scheindlin's ruling and National Union further requests an extension of time of up to fourteen (14) days following her ruling to respond to Raytheon's Complaint and Motion for Preliminary Injunction.

**B.    IN ACCORDANCE WITH THE TERMS OF THE PARTIES' ARBITRATION CLAUSE AND SECTION 4 OF THE FEDERAL ARBITRATION ACT, THIS ACTION MUST BE TRANSFERRED TO THE NEW YORK FEDERAL COURT BECAUSE ONLY THE NEW YORK COURTS POSSESS A CLEAR MANDATE TO COMPEL ARBITRATION IN NEW YORK.**

The Payment Agreement contains a broad arbitration clause that states, in relevant part, that:

> If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make an application to a Justice of the

> Supreme Court of the State of New York, Court of New York and the Court
> will appoint the additional arbitrator or arbitrators.

See Exhibit "A" of Exhibit "A" to Raytheon Company's Motion for Preliminary

Injunction, p. 10. In addition, National Union and Raytheon further agreed that

"[t]he arbitration must take place in New York, New York unless you and we agree

otherwise." Id. Raytheon, however, did not appoint an arbitrator within 30 days of

receiving National Union's Demand for Arbitration.

> Section 4 of the Federal Arbitration Act also states, in part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to
> arbitrate under a written agreement for arbitration may petition any United
> States district court which, save for such agreement, would have jurisdiction
> under title 28, in a civil action or in admiralty of the subject matter of a suit
> arising out of the controversy between the parties, for an order directing that
> such arbitration proceed in the manner provided for in such agreement. …

See 9 U.S.C. § 4. When Raytheon failed to appoint an arbitrator, and instead

initiated two lawsuits, National Union was aggrieved and filed a motion to compel

arbitration with the New York Federal Court pursuant to Section 4 of the Federal

Arbitration Act because Raytheon and National Union agreed that any arbitration

would take place in New York, New York.

In fact, at the hearing held on December 30, 2003 before Judge Scheindlin,

Raytheon did not appear to dispute that the New York Federal Court possesses

authority to compel arbitration and that this Court may lack the authority to compel

arbitration in New York.

MR. WANG [Raytheon's counsel]: But, Judge, we are not arguing that Massachusetts would have the power to compel an arbitration in New York. We're not arguing that. But we are certainly arguing – and I don't think there can be an opposite argument – that Massachusetts does not have the power to enjoin the arbitration in New York. In other words –

THE COURT: No, I think that's a weak argument to have made, Mr. Wang. If you have the power to stay it, essentially you are denying the compelling of it, so you have taken unto yourself the identical power.

And if you don't have the power to compel but do have the power to stay, I would say that's not an even playing field. …

See Exhibit "5" at pp. 18-19.

Thus, in light of the terms contained in the parties' Payment Agreement and Section 4 of the Federal Arbitration Act, this Court should transfer the this action to the New York Federal Court because only the courts in New York possess the authority to compel arbitration in this matter. In the alternative, if this relief is not granted, National Union requests that this action be stayed pending Judge Scheindlin's ruling and National Union further requests an extension of time of up to fourteen (14) days following her ruling to respond to Raytheon's Complaint and Motion for Preliminary Injunction.

**C.    THIS ACTION SHOULD BE TRANSFERRED TO THE NEW YORK FEDERAL COURT BECAUSE THE DISPUTE BETWEEN NATIONAL UNION AND RAYTHEON HAS A GREATER NEXUS TO THE STATE OF NEW YORK THAN THE COMMONWEALTH OF MASSACHUSETTS.**

"[A] court may weigh a number of factors including (1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the

witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake" in determining whether the defendant's choice of forum is substantially more convenient that that chosen by the plaintiff. Holmes Group, 249 F.Supp.2d at 17.

In this case, Raytheon and National Union agreed that the Payment Agreement will be governed by the laws of the State of New York. See Exhibit "A" of Exhibit "A" to Raytheon Company's Motion for Preliminary Injunction, p. 11. In addition, National Union and Raytheon further agreed that "[t]he arbitration must take place in New York, New York unless you and we agree otherwise." Id. at p. 10.

The events in dispute also have several connections to the State of New York, while there are virtually no other connections to the Commonwealth of Massachusetts apart from the location of Raytheon's headquarters. Specifically, the dispute between Raytheon and National Union involves reimbursement, in accordance with the terms of the Payment Agreement, for defense costs, settlements and claims payments arising from various claims filed throughout the country against RE&C. None of these claims, however, has any connection to the Commonwealth of Massachusetts. Rather, at least four claims – Grant, Miller, Shields and Lamere – involve lawsuits that were pending in the State of New York. See Exhibit "C" to Raytheon's Motion for Preliminary Injunction, p. 4. Plainly, each of these claims had a sufficient connection to the State of New York to be

litigated there, but none had a sufficient nexus to be litigated in the Commonwealth of Massachusetts.

In addition, the Schedules to the Payment Agreement, which list the insurance policies covered under the Payment Agreement, reflect that insurance coverage was issued to, among others, the New York State Thruway Authority, the New York City Transit Authority, and the Long Island Railroad and Metro Transit Authority. Each of these insureds has obvious strong connections to the State of New York.

Thus, because the parties agreed that New York would be the venue for arbitration and that New York law would govern the Payment Agreement, and because the State of New York has greater connections to the issues involved in this dispute between Raytheon and National Union, National Union requests that this Court transfer this action to the New York Federal Court. In the alternative, if this relief is not granted, National Union requests that this action be stayed pending Judge Scheindlin's ruling and National Union further requests an extension of time of up to fourteen (14) days following her ruling to respond to Raytheon's Complaint and Motion for Preliminary Injunction.

II.    **SECTION 3 OF THE FEDERAL ARBITRATION ACT AND CONTROLLING AUTHORITY MANDATE THAT THIS ACTION BE STAYED WITH RESPECT TO ANY DISPUTES BETWEEN NATIONAL UNION AND RAYTHEON ARISING OUT OF THE PAYMENT AGREEMENT.**

All of Raytheon's claims in this action relate to the parties' dispute over Raytheon's reimbursement obligations under the Payment Agreement, and the parties agreed to arbitrate any disputes "aris[ing] about this agreement or any transaction related to it." See Exhibit "A" of Exhibit "A" to Raytheon Company's Motion for Preliminary Injunction, p. 10. Notwithstanding the parties' obligation under the Payment Agreement to arbitrate this dispute, Raytheon seeks a preliminary injunction to restrain National Union, in part, from pursuing arbitration because the arbitration clause precludes the award of multiple damages for its claim made pursuant to M.G.L. ch. 93A. The courts in Massachusetts, however, have consistently held that claims made pursuant to M.G.L. ch. 93A are arbitrable. Drywall Systems, Inc. v. ZVI Construction Co., Inc., 435 Mass. 664, 667 (2002) (a broad arbitration clause, such as the one seen here, includes statutory claims under M.G.L. ch. 93A, § 11.); see also Netnumina Solutions, Inc. v. DietRehab.com, Inc., 2001 WL 455842 at * 7-9 (D.Mass.); Bowlby v. Carter Manufacturing Corp., 138 F.Supp.2d 182, 188-189 (D.Mass. 2001).

Section 3 of the FAA also provides for the mandatory stay of an action brought in a court where that action involves an issue intended by the parties to be resolved through arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The First Circuit has consistently enforced this statute. Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 730-731 (1st Cir. 1994) (the Court of Appeals affirmed District Court's decision to stay the action and compel arbitration in Tokyo pursuant to an arbitration clause); Comm. Union Ins. Co. v. Gilbane Build. Co., 992 F.2d 386, 388 (1st Cir. 1993) (the Court of Appeals reversed the District Court's denial of motion to stay pending arbitration). Similarly, in KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42 (1st Cir. 1999), the Court of Appeals reversed the District Court's partial denial of a motion to stay pending arbitration stating, "section 3 of the FAA provides that if a suit is brought on an issue referable to arbitration under a written arbitration agreement, the court shall stay a matter until the arbitration 'has been had in accordance with the Agreement.'"

16

Here, because the disputes alleged by Raytheon against National Union arise out of the Payment Agreement between Raytheon and National Union, they are subject to arbitration and may not proceed in this Court. Accordingly, National Union requests that this Court enforce the written agreement to arbitrate by staying this action pursuant to 9 U.S.C. § 3 pending the arbitration of the parties in New York.

To the extent, however, that any portion of this action is non-arbitrable, courts have discretion to stay the remaining non-arbitrable parts of the action. Baggesen v. American Skandia Life Assur. Corp., 235 F.Supp.2d 30, 33 (D.Mass. 2002) ("Where a case involves both arbitrable and non-arbitrable claims, whether the non-arbitrable claims should be stayed pending resolution of the arbitrable claims is generally discretionary with the court"). Accordingly, to the extent that any portion of this action is non-arbitrable, National Union requests that this Court staying the non-arbitrable parts of this action pending the arbitration of the parties in New York.

### III.    NATIONAL UNION REQUESTS THAT THIS COURT DISMISS RAYTHEON'S COMPLAINT AND DENY RAYTHEON'S MOTION FOR PRELIMINARY INJUNCTION.

In addition to the reasons set forth above, National Union incorporates its arguments as set forth in its Motion to Compel Arbitration in the New York Federal Court Pursuant to 9 U.S.C. § 4 and its Reply Memorandum in Support of its Motion to Compel Arbitration. See Exhibits "2" and "4."

In summary, National Union states that Raytheon's Complaint must be dismissed and Raytheon's Motion for Preliminary Injunction must be denied because:

1. The parties have a written agreement to arbitrate any disputes "aris[ing] about this agreement or any transaction related to it." See Exhibit "A" of Exhibit "A" to Raytheon Company's Motion for Preliminary Injunction, p. 10. Payment Agreement.

2. Pursuant to the clear mandate of Section 4 of the Federal Arbitration Act, National Union has sought to compel arbitration through the United States District Court for the Southern District of New York, which has exclusive jurisdiction to compel arbitration.

3. National Union has satisfied all prerequisites under law and under its contract with Raytheon prior to submitting this matter for arbitration.

4. In spite of Raytheon's contention to the contrary, the dispute between Raytheon and National Union is arbitrable because it falls within the broad scope of the Payment Agreement. In fact, Raytheon contends that it is not responsible for reimbursement of amounts paid by National Union under its insurance program, which is precisely the subject matter of the Payment Agreement.

5. To the extent that there is any question regarding the arbitrability of any portion of the dispute between Raytheon and National Union, the

18

parties agreed that "[the Arbitrators] will have exclusive jurisdiction over the entire matter in dispute, **including any questions as to its arbitrability.**" See Exhibit "A" to Exhibit "A" of Raytheon Company's Motion for Preliminary Injunction, p. 11 (Emphasis added.).

6.    Because Raytheon continues to dispute whether National Union had a right to draw on its letter of credit as reimbursement of amounts paid by National Union under its insurance program with Raytheon, the dispute between the parties is not moot.

7.    Moreover, although Raytheon seeks to place temporal limitations on the scope of the Payment Agreement, the plain language of the agreement shows that it governs all insurance policies listed on the Schedules without regard to the date of issuance.

## CONCLUSION

For the reasons stated above, National Union respectfully requests that this Court grant its motion to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a), or in the alternative, National Union requests that this Court grant its motion to (1) extend the time for it to respond to Raytheon Company's Complaint and Motion for Preliminary Injunction, (2) stay this action pending arbitration, or (3) dismiss Raytheon Company's Complaint.

The Defendant,
National Union Fire Insurance
  Company of Pittsburgh, PA,
By its attorneys,

James J. Duane, III
B.B.O. #136500
Eric M. Chodkowski
B.B.O. #648629
TAYLOR, DUANE, BARTON
  & GILMAN, LLP
111 Devonshire Street
Boston, MA 02109
(617) 654-8200
FAX (617) 482-5350

Of counsel:
ZEICHNER ELLMAN & KRAUSE LLP
Michael S. Davis
Anthony I. Giacobbe, Jr.
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
FAX: (212) 753-0396